# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA FORD, | ) 1:06-cv-00256-SMS |
| | ) |
| Plaintiff, | ) DECISION AND ORDER ON SOCIAL |
| v. | ) SECURITY COMPLAINT (DOC. 1) |
| | ) |
| MICHAEL J. ASTRUE, | ) ORDER DIRECTING REMAND PURSUANT |
| Commissioner of Social | ) TO SENTENCE FOUR of 42 U.S.C. § |
| Security, | ) 405(g) |
| | ) |
| Defendant. | ) ORDER DIRECTING THE CLERK TO |
| | ) ENTER JUDGMENT FOR PLAINTIFF |
| | ) REGINA FORD AND AGAINST DEFENDANT |
| | MICHAEL J. ASTRUE |

Plaintiff is proceeding in forma pauperis and with counsel and is seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner)[1] denying an application for Supplemental Security Income (SSI) benefits. By order dated August 1, 2006, Judge Oliver W. Wanger reassigned this case to the undersigned Magistrate Judge because both parties had consented to the Magistrate's jurisdiction to conduct all proceedings, including ordering the entry of judgment, pursuant to 28 U.S.C. § 636(c). The matter is currently before the Court on the parties' briefs, which have been submitted to

---

[1]Michael J. Astrue is substituted for his predecessor as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

the Court on the administrative record and without oral argument.

PROCEDURAL HISTORY

On September 3, 2002, Plaintiff applied for Supplemental Security Income (SSI) with a protective filing date of September 3, 2002, alleging disability since September 3, 2002, due to high blood pressure, diabetes, being overweight, and arthritis in her knees. (A.R. 73-77, 79.) After Plaintiff's claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ) on November 17, 2003, an unfavorable decision issued on April 19, 2004. (A.R. 34-41.) On August 27, 2004, the Appeals Council remanded the matter for further hearing and for development to ascertain if there was a treating relationship and treatment records from Dr. Moyes, for additional evidence needed to evaluate properly the nature and severity of Plaintiff's visual impairment, for development of treating source evidence on Plaintiff's RFC, further evaluation of Plaintiff's subjective complaints, and supplemental evidence from a vocational expert (VE) if warranted. (A.R. 43-45.)

On April 11, 2005, a hearing was held before a different ALJ, namely James P. Berry. (A.R. 15.) Plaintiff appeared with an attorney and testified at the hearing. (A.R. 15.) On October 18, 2005, the ALJ denied Plaintiff's application for benefits. (Id. at 15-22.) Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on January 5, 2006 (A.R. 6-8), Plaintiff filed the complaint in this action on March 6, 2006. Briefing commenced on October 19, 2006, with the filing of Plaintiff's opening brief, and was completed on December 5, 2006, when Plaintiff filed a

1   reply to Defendant's opposition.

2                STANDARD AND SCOPE OF REVIEW

3        Congress has provided a limited scope of judicial review of

4   the Commissioner's decision to deny benefits under the Act. In

5   reviewing findings of fact with respect to such determinations,

6   the Court must determine whether the decision of the Commissioner

7   is supported by substantial evidence. 42 U.S.C. § 405(g).

8   Substantial evidence means "more than a mere scintilla,"

9   Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

10  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

11  (9th Cir. 1975). It is "such relevant evidence as a reasonable

12  mind might accept as adequate to support a conclusion."

13  Richardson, 402 U.S. at 401. The Court must consider the record

14  as a whole, weighing both the evidence that supports and the

15  evidence that detracts from the Commissioner's conclusion; it may

16  not simply isolate a portion of evidence that supports the

17  decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

18  2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It

19  is immaterial that the evidence would support a finding contrary

20  to that reached by the Commissioner; the determination of the

21  Commissioner as to a factual matter will stand if supported by

22  substantial evidence because it is the Commissioner's job, and

23  not the Court's, to resolve conflicts in the evidence. Sorenson

24  v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

25       In weighing the evidence and making findings, the

26  Commissioner must apply the proper legal standards. Burkhart v.

27  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

28  review the whole record and uphold the Commissioner's

                                3

determination that the claimant is not disabled if the
Commissioner applied the proper legal standards, and if the
Commissioner's findings are supported by substantial evidence.
See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
the Court concludes that the ALJ did not use the proper legal
standard, the matter will be remanded to permit application of
the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th
Cir. 1987).

ANALYSIS

I. Disability

In order to qualify for benefits, a claimant must establish
that she is unable to engage in substantial gainful activity due
to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of
not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
claimant must demonstrate a physical or mental impairment of such
severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last

4

1  fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d

2  1273, 1275 (9th Cir. 1990).

3      The regulations provide that the ALJ must make specific

4  sequential determinations in the process of evaluating a

5  disability: 1) whether the applicant engaged in substantial

6  gainful activity since the alleged date of the onset of the

7  impairment, 2) whether solely on the basis of the medical

8  evidence the claimed impairment is severe, that is, of a

9  magnitude sufficient to limit significantly the individual's

10 physical or mental ability to do basic work activities; 3)

11 whether solely on the basis of medical evidence the impairment

12 equals or exceeds in severity certain impairments described in

13 Appendix I of the regulations; 4) whether the applicant has

14 sufficient residual functional capacity, defined as what an

15 individual can still do despite limitations, to perform the

16 applicant's past work; and 5) whether on the basis of the

17 applicant's age, education, work experience, and residual

18 functional capacity, the applicant can perform any other gainful

19 and substantial work within the economy. <u>See</u> 20 C.F.R. § 416.920.[2]

20     Here, the ALJ found that Plaintiff had not engaged in any

21 substantial gainful activity since September 3, 2002. (A.R. 16.)

22 The ALJ found that Plaintiff had severe impairments of obesity,

23 insulin-dependent diabetes mellitus, and peripheral neuropathy.

24 (A.R. 17.) The ALJ concluded that Plaintiff could nevertheless

25 perform a wide range of light work that precluded lifting and

26 carrying more than twenty pounds occasionally and ten pounds

27

28

[2] All references to the Code of Federal Regulations are to the 2005 version unless otherwise stated.

frequently with standing, walking, or sitting for no more than about six hours of an eight-hour workday and that precluded more than occasional stooping, climbing, kneeling, crouching, or crawling. (A.R. 19-20.) The ALJ concluded that Plaintiff was not credible, and her testimony and allegations were given little evidentiary weight. (A.R. 18.)

II. Treatment of Experts' Opinions

Plaintiff raises arguments concerning the ALJ's failure to find that Plaintiff's visual impairment was severe and his finding that Plaintiff's combined impairments still permitted her to engage in a wide range of light work.

A. Visual Impairment

Plaintiff argues that the ALJ's finding that Plaintiff did not suffer a severe impairment of her vision was not supported by substantial evidence or by legally sufficient reasons.

At step two, the Secretary considers if claimant has "an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). This is referred to as the "severity" requirement and does not involve consideration of the claimant's age, education, or work experience. Id. The step-two inquiry is de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 153-54 (1987). The Secretary is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes

6

1  necessary to do most jobs, such as physical functions of walking,

2  standing, sitting, lifting, pushing, pulling, reaching, carrying,

3  or handling; capacities for seeing, hearing, and speaking;

4  understanding, carrying out, and remembering simple instructions;

5  use of judgment; responding appropriately to supervision, co-

6  workers and usual work situations; and dealing with changes in a

7  routine work setting. 20 C.F.R. § 416.921(b).

8      An impairment or combination thereof is not severe when

9  medical evidence establishes only a slight abnormality or a

10 combination of slight abnormalities which would have no more than

11 a minimal effect on an individual's ability to work. An

12 impairment is not severe if it does not significantly limit a

13 claimant's physical or mental ability to do basic work

14 activities. 20 C.F.R. § 416.921(a); Soc. Sec. Ruling 85-28;

15 Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

16     On October 14, 2002, Dr. Tomas Rios, who was certified in

17 internal medicine, performed a consultative, comprehensive,

18 internal medicine examination of Plaintiff, who was then forty

19 years old and who complained chiefly of being diabetic and

20 arthritic. (A.R. 237-40.) Plaintiff complained of deteriorating

21 vision, especially in the left eye, and reported a history of

22 strabismus[3] as a child. She reported that she did not drive, lived

23 with her mother, and tried to help with the household chores.

24 (A.R. 237.) A Snellen eye exam without lenses reflected 20/50

25 right, 20/200+ left, with strabismus noted with the left eye,

26

27     [3] Strabismus is defined as a deviation of the eye which the patient cannot overcome in which the visual axes

28 assume a position relative to each other different from that required by the physiological conditions. Dorland's
   Illustrated Medical Dictionary (28th ed. 1994) p. 1584.

1  laterally deviated; and disc margins showed no edema, but there

2  was some background diabetic retinopathy observed. (A.R. 238.)

3  Her overall balance and equilibrium were not significantly

4  compromised. She had lost some vision in the left eye, but she

5  had strabismus as a child. He noted in part:

6        She feels fairly compensated, however, as she is
         able to maneuver herself around the examination
7        office without any visual guidance or assistance.
         Nonetheless, she has significant loss of her
8        overall visual acuity on account of the above.

9  (A.R. 239.) He did not include any information concerning

10 Plaintiff's eyes in the functional assessment. (A.R. 240.)

11     On January 26, 2005, Plaintiff was examined by Cary Freeman,

12 M.D. at the Kern Faculty Medical Group, Inc. (A.R. 272-73.) Dr.

13 Freeman was board certified in ophthalmology. (A.R. 274.)

14 Plaintiff complained of poor vision in the left eye since

15 childhood; she had a history of crossed eyes since childhood; eye

16 surgery in her youth did not help. Upon examination, visual

17 acuity with the best correction was 20/50 in the right eye and

18 20/300 in the left eye. (A.R. 272, 274.) Confrontation visual

19 fields were intact in each eye; extraocular muscle movement

20 showed alternating exotropia[4] in the eyes. Plaintiff probably had

21 amblyopia[5] in the left eye; she had alternating exotropia; the

22 patient had difference in the refractive error, and this was the

23 most likely cause for the problem with the vision as well as

24 exotropia. (A.R. 273-74.) The prognosis was fair, and the alleged

25

26     [4] Exotropia is defined as strabismus in which there is permanent deviation of the visual axis of one eye away
   from that of the other, resulting in diplopia. Dorland's Illustrated Medical Dictionary (28th ed. 1994) p. 593. Diplopia
27 is defined as perception of two images of a single object, also called ambiopia or double vision. Id. at p. 475.

28     [5]Amblyopia is defined as impairment of vision without detectable organic lesions of the eye. Dorland's
   Illustrated Medical Dictionary (28th ed. 1994) p. 53.

level of vision was consistent with the degree of pathology. (A.R. 274.)

The ALJ concluded that symptoms from Plaintiff's vision impairment were no more than slight abnormalities that had no more than a minimal effect on Plaintiff's ability to work; thus, her vision impairment was not a medically determinable severe impairment pursuant to Soc. Sec. Ruling 85-28. (A.R. 16.) The ALJ reasoned as follows:

> On January 26, 2005, the claimant underwent an ophthalmological examination by a consultative examiner. The claimant was diagnosed with amblyopia of the left eye and alternating exotropia. The claimant's best corrected visual acuity was 20/50 in the right eye and 20/300 in the left eye (Exhibit 10F, pp. 1-4). However, her measured visual acuity was sharply in contrast with earlier measurements by the internal medicine consultative examiner that indicated her <u>uncorrected</u> visual acuity was 20/50 in her right eye and 20/200+ in the left eye (Exhibit 5F, p. 2).
>
> These discrepancies in the claimant's measured visual acuity undermine the reliability of the test results and limitations indicated in the ophthalmological examination by the consultative examiner. The internal medicine consultative examiner, Dr. Rios, noted that the claimant stated that she felt she had fairly compensated for the visual condition. Dr. Rios also observed that the claimant was capable of moving about the examination room without difficulty or assistance, despite not wearing any corrective lens. Dr. Rios noted that the claimant had some loss of visual acuity, but did not assign any specific limitations to the claimant due to any vision loss (Exhibit 5F, pp. 3-4.)

(A.R. 16.)

Plaintiff argues that the ALJ rejected the opinions of the consulting examiners concerning Plaintiff's having a severe visual impairment. Although it is not clear that the ALJ rejected the opinions in their entirety, it appears that he rejected Dr. Freeman's measurement of Plaintiff's vision.

1    The opinion of an examining physician is entitled to greater

2 weight than the opinion of a nonexamining physician. Lester v.

3 Chater, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted

4 opinion of an examining physician may be rejected only if the

5 Commissioner provides clear and convincing reasons for rejecting

6 it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir.

7 2001). An ALJ may reject the opinion of an examining physician

8 and adopt the contradictory opinion of a nonexamining physician

9 only for specific and legitimate reasons that are supported by

10 substantial evidence in the record. Moore v. Commissioner of

11 Social Security Administration, 278 F.3d 920, 925 (9th Cir. 2002)

12 (quoting Lester v. Chater, 81 F.3d at 830-31).

13    The reason given for rejecting Dr. Freeman's opinion

14 regarding visual acuity was that discrepancies in the measured

15 visual acuity undermined the reliability of the test results and

16 limitations indicated in Dr. Freeman's exam. Dr. Rios's

17 measurement in October 2002 was based on a Snellen test[6] without

18 lenses (A.R. 238), which presumably refers to a test undertaken

19 without correction. Dr. Freeman's mode of testing was not stated

20 but may be inferred to be a Snellen-type test because it is

21 stated in terms identical to Dr. Rios's and uses the same types

22 of measurements, including a "20" reference, which appears to

23 refer to what is ordinarily seen at twenty feet. Dr. Freeman's

24 testing was of visual acuity with "best correction," so it

25 permitted correction. There was no difference in the readings for

26

27        [6] A Snellen's test is one using a Snellen's chart, which consists of block letters in gradually decreasing sizes,

28 identified according to distances at which they are ordinarily visible, and used to test visual acuity. Dorland's
Illustrated Medical Dictionary (28th ed. 1994) p. 307.

the right eye; however, one test involved correction and the other did not, so the same result for both could be interpreted as a discrepancy. However, it is just as likely that the condition being measured was not subject to correction. The record does not affirmatively indicate whether Plaintiff's condition in her right eye is subject to correction. Thus, it is not even clear that there was any discrepancy with respect to the right eye.

With respect to the left eye, Dr. Rios's measure was 20/200+ left with strabismus; Dr. Freeman's was 20/300. (A.R. 238, 272.) It thus appears that Plaintiff's left eye was worse in 2005 when corrected than it was in 2002 when not corrected.

The opinions of the two doctors were consistent with respect to diagnosis and the fact that Plaintiff had significant vision loss; they differed with respect to the measurements of the visual acuity in the left eye. To this small extent, the two opinions were clearly inconsistent. Thus, to reject Dr. Freeman's opinion, the ALJ had to state specific and legitimate reasons.

The conclusion that the difference in the two readings of Plaintiff's visual acuity undermined the reliability of the second test results does not flow logically from the evidence in the record. The record does not contain any evidence that would cause a disparity to be viewed as an indication of unreliability of either test. Further, there is no evidence that would discredit other reasons for the disparate readings, such as a worsening of Plaintiff's condition. There is no medical evidence tending to show that Plaintiff's visual limitations in either eye were or were not ultimately subject to correction. It does not

1  appear that the ALJ had any special medical expertise that would
2  permit a conclusion that the disparate test results were such
3  that one of the tests was invalidated.

4      The Court further notes that Dr. Freeman was an eye
5  specialist, whereas Dr. Rios was a specialist in internal
6  medicine; further, Dr. Freeman's opinion was reached by an
7  examination conducted over two years after Dr. Rios's exam. The
8  ALJ did not appear to consider these factors which bear on the
9  weight to be given an opinion. The Social Security Administration
10  (SSA) generally gives more weight to the opinion of a specialist
11  about medical issues related to his or her area of specialty than
12  to the opinion of a source who is not a specialist. 20 C.F.R. §§
13  404.1527(d)(5), 416.927(d)(5). Further, a more recent opinion may
14  be entitled to greater deference than an older opinion, as may an
15  opinion which describes or considers significant medical events
16  or conditions. Orn v. Astrue, - F.3d -, 2007 WL 2034287, *7 (9th
17  Cir. 2007). Given this regulatory context, the fact that
18  Plaintiff had complained of deteriorating vision (A.R. 237), and
19  the lack of specification of any reason why the changed test
20  results necessarily reflected on the reliability of the tests,
21  the Court concludes that the ALJ did not state legitimate reasons
22  for rejecting the test results of Dr. Freeman.

23      Further, to the extent that both doctors' opinions were
24  consistent, the reason was not clear and convincing.

25      Plaintiff argues that the ALJ's conclusion that Plaintiff
26  did not have a severe impairment is not supported by the record.

27      The Court has already found wanting the ALJ's evaluation of
28  Dr. Freeman's test results. Both consultative examiners found

that Plaintiff suffered a substantial loss of visual acuity and also suffered strabismus; Dr. Freeman described Plaintiff's prognosis as "fair," (A.R. 274), and Dr. Rios concluded that Plaintiff had significant loss of overall visual acuity (A.R. 239). Neither doctor articulated how Plaintiff's limited vision affected her ability to engage in the basic work activity of seeing, or if or how Plaintiff's specific visual impairment would in turn affect her ability to perform other basic work activities described in 20 C.F.R. § 416.921(b) that require or may require vision of a certain capacity in order to be performed, such as lifting, pushing, pulling, reaching, carrying, handling, understanding/carrying out/remembering simple instructions, responding appropriately to supervision, co-workers and usual work situations, or dealing with changes in a routine work setting.

The ALJ relied on Dr. Rios's report that Plaintiff felt that she had "fairly compensated" for the visual condition. (A.R. 16, 239.) The pertinent part of Dr. Rios's observation was in the context of gross ability to maneuver:

> She has lost some vision in the left eye, but she had strabismus as a child. She feels fairly compensated, however, as she is able to maneuver herself around the examination office without any visual guidance or assistance. Nonetheless, she has significant loss of her overall visual acuity on account of the above. There is some diabetic neuropathy to the lower extremities, but her overall balance and equilibrium did not appear to be significantly compromised at this point.

(A.R. 239.) Thus, the physician's remarks are reasonably understood only with respect to Plaintiff's ability to maneuver physically during a medical examination in an office without

assistance. This does not provide a sound basis for inferring that the effect of Plaintiff's definite visual impairment was not significant with respect to all basic work activities, which involve much more than walking into a room and to and from an examination table and subjecting oneself to examination.

The ALJ also relied on the fact that Plaintiff was not wearing corrective lenses. This is not a clear and convincing reason for rejecting an opinion of significant loss of visual acuity; indeed, it is not even specific and legitimate. There is no medical evidence in the record to the effect that Plaintiff's condition could be corrected by corrective lenses, or that such lenses were ever suggested or prescribed.

Further, the Court notes that Plaintiff, who was a slow learner, had never worked, had been on SSI until 2001, did not drive, and because of indigence suffered a delay in obtaining a prescribed walker. (A.R. 309, 311-12, 316-17, 325-26, 341, 343.) It is not clear that Plaintiff had the resources to acquire corrective lenses or that she engaged in activities that required correction. The force of the inference is severely diminished here because in order to use lack of treatment as a reason for inferring lack of severity, medical treatment must be likely to be successful, and the claimant must be able to afford the treatment. See, Orn v. Astrue, - F.3d -, 2007 WL 2034287, *11-12 (concerning negative credibility inferences concerning the extent of symptoms from uninsured, obese claimant's failure to lose weight and failure to receive treatment).

The other reason stated by the ALJ was that Dr. Rios did not assign any specific limitations based on vision loss. (A.R. 16.)

14

1  Review of Dr. Rios's report, however, shows that the chief
2  complaints of Plaintiff related to arthritis and diabetes;
3  further, in the portion of the report reserved for diagnoses, no
4  eye condition was diagnosed. The only conditions formally
5  diagnosed were diabetes, arthritis, and hypertension. (A.R. 239.)
6  Dr. Rios mentioned Plaintiff's eye condition only in the course
7  of examination and in the general findings; his only mention of
8  functionality was the reference to Plaintiff's being able to
9  maneuver around the examination room. (A.R. 237-40.) The only
10 functional restrictions noted in the functional assessment
11 portion of the report related to conditions that were covered in
12 the diagnosis portion of the report, with the exception of
13 Plaintiff's morbid obesity, which clearly interacted with
14 Plaintiff's arthritis and affected bending, stooping, and
15 lifting. (A.R. 240.) It is thus not clear that the examiner would
16 reasonably be expected to have assigned any additional functional
17 limitation to Plaintiff's vision loss.

18      Neither Dr. Rios nor Dr. Freeman stated any functional
19 assessment with respect to Plaintiff's significant vision loss.
20 Although it is the claimant's burden to prove disability, it is
21 also established that an impairment or combination thereof may be
22 found not severe only if medical evidence establishes a slight
23 abnormality that has no more than a minimal effect on an
24 individual's ability to work. Webb v. Barnhart, 433 F.3d 683,
25 686-87 (9th Cir. 2005). An ALJ may find that a claimant lacks a
26 medically severe impairment or combination thereof only when his
27 conclusion is clearly established by medical evidence. Webb v.
28 Barnhart, 433 F.3d at 687. If an adjudicator is unable to

determine clearly the effect of an impairment or combination

thereof on the claimant's ability to do basic work activities,

the sequential evaluation should not end with the not severe

evaluation step. Id. at 687 (quoting Soc. Sec. Ruling 85-28). The

ALJ must make a careful and informed evaluation of the findings

and their limiting effects:

> Inherent in a finding of a medically not severe
> impairment or combination of impairments is the
> conclusion that the individual's ability to engage
> in SGA is not seriously affected. Before this
> conclusion can be reached, however, an evaluation of
> the effects of the impairment(s) on the person's
> ability to do basic work activities must be made.
> A determination that an impairment(s) is not severe
> requires a careful evaluation of the medical findings
> which describe the impairment(s) and an informed
> judgment about its (their) limiting effects on the
> individual's physical and mental ability(ies) to
> perform basic work activities; thus, an assessment
> of function is inherent in the medical evaluation
> process itself. At the second step of sequential
> evaluation, then, medical evidence alone is evaluated
> in order to assess the effects of the impairment(s)
> on ability to do basic work activities. If this
> assessment shows the individual to have the physical
> and mental ability(ies) necessary to perform such
> activities, no evaluation of past work (or of age,
> education, work experience) is needed. Rather, it
> is reasonable to conclude, based on the minimal impact
> of the impairment(s), that the individual is
> capable of engaging in SGA. (Emphasis added.)

(Soc. Sec. Ruling 85-28 p. 3.) The ruling continues in pertinent

part:

> Great care should be exercised in applying the not
> severe impairment concept. If an adjudicator is unable
> to determine clearly the effect of an impairment or
> combination of impairments on the individual's ability
> to do basic work activities, the sequential evaluation
> process should not end with the not severe evaluation
> step. Rather, it should be continued. In such a
> circumstance, if the impairment does not meet or equal
> the severity level of the relevant medical listing,
> sequential evaluation requires that the adjudicator
> evaluate the individual's ability to do past work,
> or to do other work based on the consideration of age,
> education, and prior work experience. (Emphasis added.)

16

1 Soc. Sec. Ruling 85-28 p. 4.)

2      Although Social Security Rulings do not have the same force

3 and effect as the statute or regulations, they are binding on all

4 components of the Social Security Administration and are to be

5 relied upon as precedents in adjudicating cases; an ALJ's

6 reasoning must comport with the agency's regulations and rulings.

7 Orn v. Astrue, 495 F.3d 625, 635-40 (9th Cir. 2007) (finding

8 inadequate an ALJ's reasoning for rejecting a claimant's

9 credibility that did not comply with regulations and Social

10 Security Rulings).

11      Here, the medical evidence did not clearly establish that

12 Plaintiff's eye impairment was not severe. There was no

13 functional assessment with respect to Plaintiff's visual

14 impairment by either of the consulting examiners except to note

15 that there was significant loss of visual acuity, and the remarks

16 regarding Plaintiff's compensation by being able to navigate

17 around the examination room. There was no expert opinion or

18 substantial evidence to support the conclusion that Plaintiff's

19 visual impairment was not severe.

20      The agency's policy in this regard is clear. By regulation,

21 the medical evidence must be complete and detailed enough to

22 permit the agency to make a determination or decision about

23 whether the claimant is disabled, including the nature and

24 severity of impairments and RFC. 20 C.F.R. §§ 412.1513(e),

25 416.913(e). If the evidence received from medical sources is

26 inadequate to permit the agency to determine whether the claimant

27 is disabled, then efforts will be made to obtain additional

28 information by recontacting the medical source, including seeking

1  additional information or evidence and clarification, or by a

2  consultative examination to obtain evidence that is not contained

3  in the records of medical sources. 20 C.F.R. §§ 404.1512(e), (f),

4  416.912(e), (f); 404.1519a(b)(1), 416.919a(b)(1).

5      If, as here, an ALJ makes an erroneous finding at step two

6  to the effect that an impairment is not severe, the ALJ

7  necessarily has failed to consider at step five how the

8  combination of all impairments affected the claimant's functional

9  capacity to work. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir.

10 1996). Here, the only mention of a visual impairment in the

11 hypothetical questions posed to the expert was of an individual

12 who "would have difficulty with peripheral vision." (A.R. 357.)

13 The record does contain Plaintiff's testimony at the second

14 hearing that if looking forward she could see her hands "out

15 here" in the right eye only but not in the left. (A.R. 343.)

16 However, the ALJ found that Plaintiff was not credible, and her

17 testimony and allegations were expressly given little evidentiary

18 weight. (A.R. 18.) Difficulty with peripheral vision is not shown

19 to have been a basis for any expert's opinion in this case, and,

20 in any event, it does not give the vocational expert meaningful

21 information regarding the manner in which Plaintiff's actual

22 visual impairment of significant loss of visual acuity affected

23 her ability to do the specific things required for work in

24 general or any particular type of work.

25     The Court concludes that remand is necessary in order for

26 the Commissioner further to develop the record to obtain expert

27 opinion evidence concerning the nature and extent of the

28 limitations imposed upon Plaintiff by her visual impairment, to

1 consider the expert evidence at step two, and, if appropriate, to
2 complete the additional steps of the disability analysis,
3 obtaining expert vocational testimony if necessary.

4     However, in order to determine the nature and extent of any
5 further proceedings that will be appropriate, the Court will
6 consider the remainder of Plaintiff's contentions.

7          B. Other Opinions

8     Plaintiff argues that the ALJ failed to provide specific and
9 legitimate reasons for rejecting treating doctors' opinions
10 rendered on May 19, 2003, and July 24, 2003. (A.R. 255-57.)

11    A questionnaire was filled out by another person who signed
12 on the line labeled "PHYSICIAN'S SIGNATURE" on May 19, 2003, and
13 it indicated that Plaintiff could not perform even sedentary work
14 and could stand ten minutes and walk five minutes an hour because
15 of morbid obesity. No objective findings were stated. The form
16 indicated that the signer believed that Plaintiff had been
17 disabled to that extent since first seen by the signer on
18 December 2002 in family practice. (A.R. 256.)

19    A person who signed another such questionnaire at the space
20 labeled "PHYSICIAN'S SIGNATURE" but put the letters "FMP" after
21 the signature on July 24, 2003, opined that Plaintiff could not
22 even perform sedentary work and could stand and walk only five
23 minutes because of inability to stand due to being 240 pounds
24 overweight, having legs too weak to support standing and walking,
25 pain due to degenerative joint disease, and weakness due to an
26 illegible condition. The opinion was based on stated objective
27 findings, some of which are illegible, but which included morbid
28 obesity, lower extremity x-ray, and degenerative joint disease of

1  the spine on a chest x-ray. (A.R. 255.)

2      The ALJ adopted the opinions of the examining consultative

3  doctor, Dr. Rios, who placed no limitation on standing or

4  walking, as well-supported by clinical findings and observations.

5  (A.R. 18.) He also noted that the opinion of a state agency

6  medical consultant was more restrictive but still found Plaintiff

7  capable of lifting up to twenty pounds and standing or walking

8  about six hours of an eight-hour workday. (A.R. 18.)

9      With respect to the two opinions in question, the ALJ

10 stated:

11      The claimant provided an assessment form, dated July 24,
        2003, which indicates that the claimant is generally unable
12      to perform any significant work activity (Exhibit 7F).
        However, the form was signed by a family nurse practitioner
13      (FNP). Additionally, the signature is unreadable, which
        makes it impossible to identify the family nurse
14      practitioner that provided the opinion or to ascertain
        the existence of any treatment relationship between
15      the claimant and this family nurse practitioner.
        There are no medical records in evidence of the
16      claimant receiving treatment on or around July 24, 2003.
        There is nothing in the record to establish that
17      the family nurse practitioner that signed the
        July 24, 2003 form has ever actually treated the
18      claimant at any time.

19 (A.R. 18.) The ALJ then noted the requirement that opinions

20 concerning medically determinable impairments must come from

21 acceptable medical sources, stated that a family nurse

22 practitioner was not an acceptable medical source, and further

23 noted that the opinion was not one that could reflect judgment on

24 the nature and severity of an impairment or provide a diagnosis

25 or prognosis. (A.R. 18.) For all those reasons, he gave the

26 opinion of the nurse practitioner little evidentiary weight.

27      Plaintiff argues that the ALJ's failure to recontact

28 Plaintiff's medical sources at Kern Medical Center was erroneous

and contrary to regulations that require the Commissioner to recontact a treating medical source for additional information when the treating opinion is ambiguous, inconsistent, incomplete, or appears not to be based on objective findings. See, 20 C.F.R. §§ 404.1512(e); 416.912(e).

Although Soc. Sec. Ruling 96-5p states that every reasonable effort must be made to recontact a treating source to clarify the reasons for an opinion where the source's opinion is on an issue reserved to the Commissioner and is unsupported by evidence, Soc. Sec. Ruling 96-5p at 5, the ruling applies to medical opinions of acceptable medical sources, id. at 2. Title 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) specifically define medical opinions in pertinent part as statements from "physicians and psychologists or other acceptable medical sources." Sections 404.1502 and 416.902 provide that an acceptable medical source is one described in §§ 404.1513(a) and 416.913(a), which in turn restrict the category to include only licensed physicians, licensed or certified psychologists, and licensed optometrists, licensed podiatrists, and speech-language pathologists for limited purposes; further, they provide that only these sources may establish an impairment and what a claimant may still do. Other sources, such as nurse practitioners, may be used to show the severity of an impairment or how it affects the ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d).

The pertinent policy was clarified in Soc. Sec. Ruling 06-03p, which issued and became effective August 9, 2006, after the ALJ's decision in this case and the Appeals Council's denial of reconsideration. However, the ruling appears consistent with

existing law and simply clarifies the evaluation process. It
provides that only acceptable medical sources can give medical
opinions, be considered treating sources as defined in 20 C.F.R.
§ 404.1502 and 416.902, and thus constitute experts whose medical
opinions may be entitled to controlling weight. Soc. Sec. Ruling
06-03p at 2 (also citing 20 C.F.R. §§ 404.1527(d) and
416.927(d)). In evaluating opinion evidence from other sources,
the ALJ may give varying weight to such evidence according to the
particular facts of the case, the source of the opinion,
including the source's qualifications, the issues that the
opinion is about, and other factors, including the length and
frequency of the relationship or contact with the claimant,
consistency of the opinion with other evidence, degree of
supporting evidence, merit of any explanation for the opinion,
specialty or area of expertise, and any other factors that tend
to support or refute the opinion. Soc. Sec. Ruling 06-03p at 4-5.
The fact that a medical opinion is from an acceptable medical
source is a factor that may justify giving that opinion greater
weight than an opinion from a medical source who is not an
acceptable medical source. Id.

This is consistent with the established rule that with
respect to lay testimony, the ALJ must give specific reasons that
are germane to each witness. Dodrill v. Shalala, 12 F.3d 915,
918-19 (9th Cir. 1993).

Arguably, a physician's assistant may be considered to be an
acceptable medical source where the assistant consults frequently
and works closely with a physician and thus acts as an agent of
the doctor in the relationship with the patient. In Gomez v.

1 <u>Chater</u>, 74 F.3d 967, 970-71 (9th Cir. 1996), the court relied on
2 20 C.F.R. § 416.913 regarding reports of interdisciplinary teams
3 and determined that a nurse practitioner who worked in
4 conjunction with, and under the close supervision of, a physician
5 could be considered an acceptable medical source, but one working
6 on his or her own is not an acceptable medical source.

7     Here, there is no evidence establishing that the nurse
8 practitioner was working under circumstances that the
9 practitioner was an acceptable medical source.

10     Because it is legitimate for an ALJ to place little weight
11 on a source because the source is not an acceptable medical
12 source, and because substantial evidence supports the ALJ's
13 conclusion that the nurse practitioner was not an acceptable
14 medical source, it is concluded that the ALJ did not fail to give
15 specific, germane, and legitimate reasons for discounting the
16 opinion of the nurse practitioner.

17     Although Plaintiff asserts that the nurse practitioner was a
18 doctor (Brief p. 5) and that the ALJ conceded that the signatures
19 matched those of treating sources from Kern contained in the
20 record, there is no citation by either party of evidence in the
21 record concerning a concession by the ALJ with respect to the
22 signature of the nurse practitioner.

23     As to the assessment of May 19, 2003, the ALJ noted that
24 signer of the form had not identified himself or herself as a
25 treating physician or even a medical doctor; the other records in
26 evidence did reflect a person with a similarly illegible
27 signature did treat Plaintiff on May 19, 2003, at the Kern
28 Medical Center and was identified in those records as Gabriela

1  Mogrovejo RTN, who signed in a space reserved for a resident's

2  signature (A.R. 19, 263-64.) The ALJ noted that the acronym RTN

3  was apparently a local abbreviation in the hospital indicating

4  that the person was or was something similar to a resident in

5  training. Although a "resident" would be a licensed physician

6  that is receiving training in a specialty at a hospital,

7  Mogrovejo did not sign with the suffix "M.D." and thus the record

8  was unclear as to whether or not she was a licensed physician or

9  not. (A.R. 19.)[7]

10     However, even if Mogrovejo were a physician, the ALJ set

11  forth a further evaluation, in which he considered factors

12  pertinent to a medical opinion:

13     Additionally, Ms. Mogrovejo did not provide any
       supporting "objective findings" in question 5 on
14     the form to provide an (sic) objective support for the
       limitations stated on the form (Exhibit 8F). Ms.
15     Mogrovejo states that the claimant could walk no more
       than about five minutes every hour (Exhibit 8F). On
16     May 19, 2003, the claimant stated to Ms. Mogrovejo
       that she was unable to work secondary to her obesity
17     and also stated that she was unable to work more than
       about five minutes at a time (Exhibit 9F, p. 9) [A.R. 265].
18     The medical records from the May 19, 2003 office visit
       do not have any recorded observations of any abnormality
19     other than morbid obesity (Id. at pp. 7-9) [A.R. 263-65].
       For the reasons above, I find the records in evidence
20     clearly indicate the limitations provided in the
       May 19, 2003 opinion from Ms. Mogrovejo were based
21     primarily upon the claimant's subjective statements
       about what she could not do, rather than on clear objective
22     findings of clinical abnormalities, signs, or symptoms.

23     For all the reasons above, I find the May 19, 2003
       opinion, presumptively from Ms. Mogrovejo, is
24     unsupported by any objective clinical findings in the
       May 19, 2003 examination by Ms. Mogrovejo and the
25     opinion is based largely, or solely, upon the subjective
       allegations of the claimant about her limitations. As

26

27

28     [7]There was evidence that Mogrovejo had seen Plaintiff in December 2002
       (A.R. 256), and that Plaintiff had seen a doctor, referred to at the hearing
       as "Mongrovia," but that such person was no longer there (A.R. 344).

discussed above, the claimant is not credible. Therefore,
I find the May 19, 2003 opinion is unsubstantiated by the
record in evidence, is unreliable, and is entitled to
little evidentiary weight.

(A.R. 19.)

Mogrovejo's opinion was controverted by other opinions that
the ALJ adopted. If Mogrovejo were a licensed physician, then in
order for the ALJ validly to place little weight on Mogrovejo's
opinion, the ALJ would have to state specific and legitimate
reasons supported by substantial evidence in the record.
Rodriguez v. Bowen, 876 F.2d 759, 762 (9ᵗʰ Cir. 1989). The fact
that a treating physician's opinion is not supported by objective
clinical findings is a valid reason for rejecting the opinion. It
is established that the opinion of a treating physician may be
rejected if it is conclusionary in form and not supported by
clinical findings. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th
Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751.

Here, as Plaintiff points out in the reply, there were
findings that Plaintiff was 240 pounds overweight, etc., in the
assessment made in July 2003, and thus somewhere in the record
there were clinical findings to support Mogrovejo's opinion. (AR.
255.) However, the essence of the ALJ's concern was the basis
used by Mogrovejo to assess the severe limitations she herself
placed on Plaintiff. The notes of the exam by Mogrovejo on May
19, 2003, indicate an assessment that Plaintiff had morbid
obesity, diabetes, and uncontrolled hypertension. (A.R. 263-65.)
The only clinical findings stated were Plaintiff's weight of
384.5 pounds, height of sixty-five inches, temperature, and so
forth. (A.R. 265.) The portion of the form for the complaint of

the patient indicated that Plaintiff complained that she was filing for disability and was unable to work secondary to morbid obesity; she complained that she could not walk more than five minutes and that she sat at home all day. (Id.)

There is thus substantial evidence to support the ALJ's reasoning that although Plaintiff was morbidly obese, there were no specific objective findings supporting the precise limitations placed on Plaintiff, and further, that the limitations appeared to be based primarily, if not solely, on Plaintiff's subjective complaints.

Plaintiff argues that it is reasonable to assess standing and walking limitations due to morbid obesity and Plaintiff's other problems. However, whether or not imposing such a limitation, if supported by specific clinical findings, would be reasonable, is not the issue. Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). It is not for this Court to determine how to weigh the evidence in the first instance. Rather, the question is whether there was substantial evidence supporting a specific and legitimate reason or reasons for rejecting the opinion.

With respect to Plaintiff's credibility, the ALJ expressly found that Plaintiff was not credible and gave her testimony and allegations very little weight. (A.R. 18.) He rejected Plaintiff's subjective complaints. He concluded that Plaintiff's alleged limitations on standing and carrying or lifting were inconsistent with the objective medical evidence and acceptable objective medical opinions in the record, including those of Dr.

1  Rios and a state agency physician; her testimony was inconsistent

2  with prior admissions; and she had been less than candid about

3  having been convicted and having served a prison term for a crime

4  of moral turpitude, including two years in prison for check

5  forgery as well as an arrest record that reflected either arrest

6  or conviction for forgery, burglary, criminal conspiracy, cruelty

7  to a child, false identification to a peace officer, theft, and

8  petty theft with a prior. (A.R. 18). In the present action,

9  Plaintiff does not challenge the ALJ's credibility findings.

10      It is established that where a treating source's opinion is

11  based largely on the Plaintiff's own subjective description of

12  his or her symptoms, and the ALJ has discredited the Plaintiff's

13  claim as to those subjective symptoms, the ALJ may reject the

14  treating source's opinion. Matney on Behalf of Matney v.

15  Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992); Fair v. Bowen, 885

16  F.2d 597, 605 (9th Cir. 1989).

17      Thus, even if the ALJ erred in concluding that it was not

18  clear that Mogrovejo was a doctor, the error was harmless because

19  the ALJ considered the opinion as if it were a treating opinion.

20  After such consideration, the ALJ expressly placed little weight

21  on it because of specific, legitimate reasons supported by

22  substantial evidence. Thus, the error was harmless in the sense

23  that it was inconsequential to the disability determination.

24  Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006) (citing

25  Batson v. Commissioner of Social Security Administration, 359

26  F.3d 1190, 1195-97 (9th Cir. 2004)).

27      Accordingly, the Court concludes that the ALJ stated

28  specific and legitimate reasons, supported by substantial

1  evidence in the record, for placing little weight on the opinions

2  of the nurse practitioner and of Mogrovejo.

3      III. <u>Disposition</u>

4      Based on the foregoing, the Court concludes that to the

5  extent that the ALJ determined that Plaintiff's visual impairment

6  was not severe, the ALJ's decision was not supported by

7  substantial evidence in the record as a whole and was not based

8  on proper legal standards.

9      A district court is authorized to affirm, modify, or reverse

10 a decision of the Commissioner of Social Security, with or

11 without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

12 The decision whether to remand a matter pursuant to sentence four

13 of § 405(g) or to order immediate payment of benefits is within

14 the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3d

15 1172, 1178 (9th Cir. 2000). When a court reverses an

16 administrative agency determination, the proper course, except in

17 rare circumstances, is to remand to the agency for additional

18 investigation or explanation. <u>Moisa v. Barnhart</u>, 367 F.3d 882,

19 886 (9th Cir. 2004) (citing <u>INS v. Ventura</u>, 537 U.S. 12, 16

20 (2002)). It is not necessary to order an award of benefits, which

21 generally is directed where no useful purpose would be served by

22 further administrative proceedings, or where the record has been

23 thoroughly developed. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th

24 Cir. 2003); <u>Varney v. Secretary of Health and Human Services</u>, 859

25 F.2d 1396, 1399 (9th Cir. 1988).

26     Here, additional issues remain to be addressed, and it is

27 not clear that an award of benefits to Plaintiff should result

28 after the additional issues are addressed on remand. Thus, the

28

1   Court concludes that remand is necessary in order for the

2   Commissioner further to develop the record to obtain expert

3   opinion evidence concerning the nature and extent of the

4   limitations imposed upon Plaintiff by her visual impairment, to

5   consider the expert evidence at step two, and, if appropriate, to

6   complete the additional steps of the disability analysis,

7   obtaining expert vocational testimony if necessary.

8        Accordingly, it IS ORDERED that

9        1. Plaintiff's social security complaint IS GRANTED IN PART,

10  and

11       2. The matter IS REMANDED pursuant to sentence four of 42

12  U.S.C. § 405(g) for further consideration, consistent with this

13  decision, of Plaintiff's status as disabled, including whether or

14  not Plaintiff's visual impairment was severe, and, if severe,

15  whether in light of all pertinent factors, including all

16  Plaintiff's combined impairments, on the basis of the Plaintiff's

17  age, education, work experience, and residual functional

18  capacity, she could perform any other gainful and substantial

19  work within the economy; and

20       3. Judgment BE ENTERED for Plaintiff Regina D. Ford and

21  against Defendant Michael J. Astrue.

22  IT IS SO ORDERED.

23  **Dated:   October 3, 2007**          **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28